I, Postal Inspector M.C. Glenn Aldridge, under penalty of perjury, hereby state the following:

That I have been a United States Postal Inspector since January 2004. I am authorized to conduct investigations involving the trafficking of child pornography through the United States mails and have specialized in child pornography investigations. In this capacity, I have been involved in approximately 35 investigations involving child pornography investigations involving violations of Title 18, United States Code, Sections 2251; 2252; and 2252A. I have received more than 240 hours of specialized training in the areas of Child Pornography and Child Exploitation investigations, including the following courses: FBI Innocent Images Initiative, Investigation of Online Child Exploitation, and numerous seminars at the Crimes Against Children Conference sponsored by the Dallas Police Department, numerous seminars at the Project Safe Childhood Conferences. As part of these investigations, I have been tasked, in part, with reviewing voluminous images and movies to determine if they meet the definition of child pornography under Title 18, United States Code, Section 2256, including assessment of whether visual depictions constitute a "lascivious exhibition of the genitals or pubic area of any person." I am also aware of the frequently employed "test" delineated in United States v. Dost, 636 F.Supp. 828 (S.D. Cal. 1986), which sets forth, as non-inclusive, the following six factors: whether the focal point of the visual depiction is on the child's genitalia or pubic area; whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity; whether the child is depicted in an unnatural pose, or inappropriate attire, considering the age of the child; whether the child is fully or partially clothed or nude; whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

I was the lead postal inspector in the case of United States v. David Eisenlohr, Western District of Virginia (WDVA), Criminal No. 6:08CR00034. Our investigation into Eisenlohr's activities began shortly after films and images sent to a Virginia resident, David Tetterton, by Insider's Video Club

(IVC), Eisenlohr's company, were recovered from Tetterton's residence. Tetterton was prosecuted by the Commonwealth of Virginia for child pornography offenses and is presently serving a 10-year sentence. During the course of my investigation of IVC and Eisenlohr, I assumed an undercover identity and ordered films and photographs from IVC which material served as the basis for the WDVA prosecution. The materials, which included films, still images, and "Arcades" (brochures that described IVC products and included photographs of the "actors" therein, including photographs of naked minor boys), were shipped from IVC in California to Bedford, Virginia.

During the investigation, two search warrants were executed at Eisenlohr's business December 19, 2006 at 5220 Santa Monica Blvd., Hollywood, CA, 90029 and numerous other items were seized, including approximately 450 films, approximately 600 still images, 113 boxes of Arcade brochures; other copies of Arcade brochures; and six computers that contain images of nude minor boys. I and other investigators reviewed each of the 450 films long enough to determine that each depicted naked minor boys. As I recall, the great majority of the Arcade brochures that were reviewed also depicted, in part, naked minor boys.

Regarding the material that IVC mailed to the WDVA during my investigation, I have re-reviewed the following material and based on my review, as further set forth in the descriptions set forth below, I believe that the following materials constitute child pornography within the standards of this civil forfeiture action:

I have reviewed a digital video diskette (DVD), "Oskar and His Moped - Part 1." I have determined that the DVD "Oskar and His Moped - Part 1" contains depictions of a minor engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256, namely, the lascivious exhibition of the genitals or pubic area of a boy under the age of fifteen years. The video "Oskar and His Moped" depicts what appears to be a 12 to 14 year old boy, totally nude except for socks

and shoes while he sits and works on, squats next to, and rides a motorcycle with the camera focused, at times, on his genitalia. There are times when the camera focus is such that his head is cropped from the video so that more of his pubic area is displayed. At times the young boy is heard speaking German and other times music is dubbed over his speech, an indication that the movie's main focus is depicting the boy with his penis prominently displayed.

I reviewed two sets of color photographs named "Oskar II," and "On the Gulf II" which contains depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256, namely, the lascivious exhibition of the genitals or pubic area of a boy under the age of fifteen years, a number of these photographs are further described as follows:

    i. A photograph bearing the notation "Oskar II #70505 (a)" depicts a nude boy who appears to be between the ages of nine and twelve straddling a motorcycle while facing the camera. The boy's legs are spread and the viewer is directed to focus on the boy's genitalia.

    ii. A photograph bearing the notation "Oskar II #70505 (b)" depicts a nude boy who appears to be between the ages of nine and twelve standing next to a motorcycle. He is looking downward. The focus of the photograph is the boy's genitalia in that his genitalia are at the center of the image.

    iii. A photograph bearing the notation "Oskar II #70505 (c)" depicts a nude boy who appears to be between the ages of nine and twelve sitting on a motorcycle. He is looking downward and his face is away from the camera which directs the viewer to focus on the boy's genitalia.

iv. A photograph bearing the notation "Oskar II #70505 (d)" depicts a nude boy who appears to be between the ages of nine and twelve bending at the waist at a picnic table. The focus of the photograph is the boy's genitalia in that his genitalia are at the center of the image.

v. A photograph bearing the notation "Oskar II #70505 (e)" depicts a nude boy who appears to be between the ages of nine and twelve standing next to a motorcycle and repairing the handlebar. The focus of the photograph is to direct the viewer to the boy's genitalia.

vi. A photograph bearing the notation "Oskar II #70505 (f)" depicts a nude boy who appears to be between the ages of nine and twelve standing next to a motorcycle and looking downward at the handlebars. His face is away from the camera, which directs the viewer to focus on the boy's genitalia.

vii. A photograph bearing the notation "Oskar II #70505 (g)" depicts a nude boy who appears to be between the ages of nine and twelve standing next to and leaning on a tree with a knife in his right hand. The focus of the photograph is the boy's genitalia in that his genitalia are at the center of the image.

viii. A photograph bearing the notation "Oskar II #70505 (h)" depicts a nude boy who appears to be between the ages of nine and twelve walking in the woods. The focus of the photograph is the boy's genitalia in that his genitalia are at the center of the image.

ix. A photograph bearing the notation "On the Gulf II 70428 (a)" depicts a nude boy who appears to be between the ages of seven and nine posed sitting on a towel draped across a large piece of driftwood. The boy's legs are spread with his penis prominently exposed and his hands resting on his lower hips directing the viewer to focus on the boy's genitalia.

x. A photograph bearing the notation "On the Gulf II 70428 (b)" depicts a nude boy who appears to be between the ages of seven and nine posed standing at an angle to the camera. His face is turned away and his left hand is on the back of his head. His right arm is fully extended away from his body. The unnatural posing of the boy's arms and face away from the camera directs the viewer to focus on the boy's genitalia.

Regarding the above-described Oskar materials, since the criminal trial of Eisenlohr, the United States Postal Inspection Service (USPIS) has learned of and viewed a movie recovered from an unrelated subject which depicts, in part, "Oskar" (the same child described in the Oskar movie and images above) engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256, that include acts of masturbation with another male minor. Oskar and another minor boy appear to be between the ages of eleven and thirteen years old. This movie, among other things, contains images of Oskar and another minor male masturbating themselves and each other. The movie also depicts Oskar sitting on a red blow up mattress touching his penis with his hand and several close-up shots of his penis, in which Oskar's head is not in the frame of the movie.

The background in this Oskar film appears to feature, at least in part, the same background depicted in *Oskar and His Moped, Part 1* (introduced at Eisenlohr's trial as Government Exhibit 16), including the same plastic tarps covering the fencing. The movie was created with the same child and at what appears to be at the same location

Based on my training and experience, and information provided by other law enforcement agents, I know that is not uncommon for individuals who produce child pornography to use a child to produce both visual depictions which meet the federal definition of child pornography, and produce visual depictions that do not meet the federal definition of child pornography.

Regarding the other materials that have been recovered during my investigation, it is my belief that these other materials, even if they do not meet the federal definition of child pornography, are materials which promote Eisenlohr's distribution of child pornography materials. The United States intends to conduct a further and complete review of the visual depictions (films, still images, and brochures) which are presently located in Monrovia, California and Richmond, Virginia, to determine whether any additional materials are rightly characterized as child pornography or "child erotica."

Based on my training and experience, I have learned that "child erotica" are materials or items that are sexually suggestive and arousing to pedophiles, but which are not in and of themselves obscene or pornographic. Such items may include photographs of clothed children, drawings, sketches, fantasy writings, diaries, pedophilic literature and sexual aids. "Child erotica" is often times used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites. Some child pornographers have even "made" their own child erotica by secretly video taping the clothed genitals of children as they participated in everyday activities such as gymnastics, dance, swimming, etc. In addition some suspects have produced their own child pornography by taking erotic images of children and putting those images into sexually explicit depictions.

I have learned through conducting approximately 35 child pornography investigations and through information provided by other investigators that suspects in child pornography investigations have disclosed they are sexually aroused by "child erotica" in addition to child pornography. In more than half of the child pornography cases I have investigated, I have recovered "child erotica" images. Based on my training and experience, and information provided by other law enforcement agents, I know that in order establish and maintain market presence, build client contacts, build reputation, and mask the part of the business which involves child pornography and that conduct which is illegal, it is common for individuals who are engaged in the commercial distribution of child

pornography to also sell visual depictions of children which do not meet the federal definition of child pornography, and to use visual depictions of children which do not meet the federal definition of child pornography for purposes such as advertising. The use of employment of such visual depictions of children which do not meet the federal definition of child pornography thus facilitates and promotes that portion of the individual's business which is based on the commercial distribution of child pornography.

*MC Glenn Aldridge* (signature)

MC Glenn Aldridge, Inspector
U.S. Postal Inspection Service

*October 2, 2009* (signature)

DATE